IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA RENEE GARDNER and REGINALD ELAM, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | |
| SPECIALIZED LOAN SERVICING LLC, and DEUTSCHE BANK TRUST COMPANY NATIONAL ASSOCIATION, as Trustee for HIS Asset Corporation Trust 2006-HEI, Mortgage Pass-Through Certificate, Series 2006-HEI, its/their successors and/or assigns, | § § § § § § § § § § | No. 3:21-cv-2804-G-BN |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. 636(b) and a standing order of reference from United States District Judge A. Joe Fish. *See* Dkt. No. 2.

Defendants Specialized Loan Servicing, LLC ("SLS") and Deutsche Bank Trust Company, National Association, as Trustee for HIS Asset Corporation Trust 2006-HEI, Mortgage Pass-Through Certificate, Series 2006-HEI, its/their successors and/or assigns ("Deutsche Bank") have filed a Motion for Summary Judgment. *See*

Dkt. No. 12. Plaintiffs Patricia Renee Gardner and Reginald Elam have filed a response, *see* Dkt. No. 26, and Defendants have filed a reply, *see* Dkt. No. 27.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court grant Defendants' motion for summary judgment on Plaintiffs' claims; order that Defendants' counterclaim and request for attorneys' fees and costs against Plaintiff Gardner are stayed; and grant a discretionary stay as to Defendants' counterclaim and request for attorneys' fees and costs against Plaintiff Elam.

## Background

This case concerns the loan servicing and attempted foreclosure of Plaintiffs' property in Garland, Texas (the "Property"). Elam executed an adjustable rate note (the "Note") payable to New Century Mortgage Corporation ("New Century") on June 10, 2005. *See* Dkt. No. 20-1 Gardner and Elam executed a deed of trust (the "Deed of Trust") that same day. *See* Dkt. No. 20-2. The Deed of Trust gave New Century a security interest in the property. *See* Dkt. No. 20-2.

The Note and the Deed of Trust (collectively the "Loan Agreement") were assigned to Deutsche Bank on November 18, 2011. *See* Dkt. No. 20-3. SLS is the servicer of the Loan Agreement. *See* Dkt. No. 20-4.

Plaintiffs defaulted on the Loan Agreement. *See* Dkt. No. 20-6. Plaintiffs then applied for loss mitigation assistance. *See* Dkt. No. 20-10. Their first complete

application was denied on May 6, 2016. *See id.* Plaintiffs applied for loss mitigation assistance several more times but never went through with accepting a loss mitigation option. *See id.*

Gardner filed for bankruptcy on May 19, 2017. *See* Dkt. No. 20-16 at 2. Her bankruptcy plan was confirmed on August 3, 2017. *See id.* The case was dismissed on June 11, 2018. *See id.*

SLS then sent Plaintiffs a Notice of Default and Intent to Accelerate on July 10, 2018. *See* Dkt. No. 20-6 at 3.

Gardner filed for bankruptcy a second time on November 5, 2018. *See* Dkt. No. 20-16 at 41. The case was dismissed on March 13, 2019. *See id.* Gardner filed for bankruptcy a third time on August 5, 2019. *See* Dkt. No. 20-16 at 93. The case was dismissed on March 31, 2020. *See id.*

SLS sent Plaintiffs a Notice of Default and Intent to Accelerate on April 27, 2020. *See* Dkt. No. 20-6 at 1. SLS filed its most recent Notice of Trustee's Sale on August 26, 2021, setting the foreclosure sale for October 5, 2021. *See* Dkt. No. 20-5 at 24.

To prevent the sale of the Property, Plaintiffs filed suit in state court on October 1, 2021. *See* Dkt. No. 1. Defendants removed to this Court on November 11, 2021. *See id.* Defendants then filed this motion for summary judgment. *See* Dkt. No. 12.

## Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R.

-4-

CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*,

140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a

party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead

a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to

summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

### I.   The automatic stay does not apply to Plaintiffs' claims but does apply to Defendants' counterclaim against and request for attorneys' fees and costs from Plaintiff Gardner.

On February 4, 2023, Gardner filed for bankruptcy. *See* Dkt. No. 32. That put into place an automatic stay of "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

#### A. Applicability of the Automatic Stay to Gardner

The automatic stay applies to claims by Defendants against Gardner. "If the action is against the debtor, or involves counterclaims against the debtor, the automatic stay will apply." *BroadStar Wind Sys. Group Ltd. Liab. Co. v. Stephens*, 459 Fed. Appx. 351, 356 (5th Cir. 2012). "Section 362(a) of the Code provides that the automatic stay prohibits 'any act to obtain possession of property of the [bankruptcy] estate.'" *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1276 (5th Cir. 1983). Taxing

fees or costs against Gardner would be an act to obtain possession of Gardner's monetary assets, which are part of the bankruptcy estate. And so both Defendants' counterclaim and Defendants' request for attorneys' fees and costs are stayed.

But "[t]he automatic stay of the bankruptcy court does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding.... [O]ther district courts retain jurisdiction to determine the applicability of the stay to litigation pending before them, and to enter orders not inconsistent with the terms of the stay." *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990). It is still appropriate for the Court to determine which claims are not affected by the automatic stay and to rule on those claims.

The automatic stay does not apply to claims by Gardner against Defendants. "The automatic stay of the Bankruptcy Code extends only to actions 'against the debtor.'" *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994). And so "a creditor's motion to … seek summary judgment of such non-stayed claims is not subject to the automatic stay." *Id.*

"Multiple claims within a single case are disaggregated for purposes of automatic stay analysis." *In re Choice ATM Enterprises, Inc.*, No. 14-44982-DML, 2015 WL 1014617 at *2 (Bankr. N.D. Tex. Mar. 4, 2015). "[W]ithin one case, actions *against* a debtor will be suspended even though closely related claims asserted *by* the debtor may continue." *Mar. Elec. Co., Inc. v. United Jersey Bank*, 959

-10-

F.2d 1194, 1205 (3d Cir. 1991) (citing *First Wisconsin National Bank v. Grandlich Development Corp.,* 565 F.2d 879, 880 (5th Cir.1978); emphasis in original).

And so Gardner's claims against Defendants are not stayed, and the undersigned will make recommendations on how the Court should rule on them.

## B. Applicability of the Automatic Stay to Elam

The automatic stay does not apply to claims by or against Elam. "[W]hile the stay protects the debtor who has filed a bankruptcy petition, litigation can proceed against other co-defendants." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985).

But "the Court may exercise its discretion to stay a proceeding against a non-bankrupt co-defendant [or co-plaintiff] in the interests of justice and in control of its dockets." *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *3 (N.D. Tex. Nov. 29, 2017) (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)). "A stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *GATX Aircraft Corp.*, 768 F.2d at 716.

Here, Defendants have an interest in the timely resolution of their claims. But Elam has an interest in having the claims against him resolved with the claims

-11-

against Gardner. Defendants request attorneys' fees and costs. It would be inequitable to tax attorneys' fees and costs against Elam and not against Gardner because they filed the same pleadings and have caused the same fees and costs to accrue to Defendants. And a judgment against Elam would not give Defendants the right to foreclose upon the Property because "any act to obtain possession of property of the [bankruptcy] estate" is stayed by the automatic stay, 11 U.S.C. § 362(a)(3), so Defendants' interest in a quick resolution of their claims is diminished.

The Court should grant a discretionary stay for Defendants' counterclaim and request for attorneys' fees and costs against Elam.

## II.    The Court should consider the Gardner Affidavit.

The Court should consider the Affidavit of Patricia Renee Gardner in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment (the "Gardner Affidavit") and attached documents. *See* Dkt. No. 26.

Federal Rule of Civil Procedure 56(c) requires an affidavit or declaration used to support or oppose a motion for summary judgment to (1) be made on personal knowledge; (2) set forth facts that would be admissible in evidence; and (3) show affirmatively that the affiant is competent to testify to the matters stated. *See* FED. R. CIV. P. 56(c)(4).

Defendants object to the Gardner Affidavit and attached documents as "inadmissible hearsay," "self-serving," and "irrelevant." Dkt. No. 27 at 2. Defendants

also argue that Gardner is not qualified to authenticate the documents submitted with her affidavit. *See id.*

The statements within the Gardner Affidavit are not hearsay. Statements "which merely recount matters within the affiant's personal knowledge and do not include an assertion made by another or made within a document are not hearsay." *Everest Indem. Ins. Co. v. Allied Intern. Emergency LLC*, No. CIV 4:08-cv-678-Y, 2009 WL 2030421 (N.D. Tex. July 14, 2009). The statements within the Gardner Affidavit are such statements. For the same reason, Gardner's certification that the documents attached to her affidavit are "the originals or exact duplicates of the original records" is not hearsay. *See id.* (finding that it was not hearsay when the affiant swore that, within her personal knowledge, the documents submitted were true and correct).

Defendants' assertion that the Gardner Affidavit is "self-serving" does not make the Gardner Affidavit objectionable. "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone." *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 Fed. Appx. 439, 443 (5th Cir. 2011). Even if arguably "self-serving," an affidavit that is not wholly conclusory and is based on personal knowledge can serve to create a fact issue. *See id.*

And the statements within the Gardner Affidavit are not irrelevant. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *See*

-13-

FED. R. EVID. 401. This is a low bar. *See Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017). The statements within the Gardner Affidavit are all relevant – even if their relevance is limited – to whether SLS serviced Plaintiffs' loan in a way that would expose it to liability. And Exhibit A-3 is relevant to whether SLS serviced Plaintiffs' loan in a way that would expose it to liability.

The Court should find that the Gardner Affidavit and attached documents are competent summary judgment evidence.

### III.   Judicial estoppel bars Gardner from bringing claims arising from facts she knew during her first bankruptcy case.

The Court should find that the doctrine of judicial estoppel bars Gardner from bringing claims arising from facts that she knew before the dismissal of her first bankruptcy proceeding.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (citation omitted). The purpose of this doctrine "is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Wakefield*, 239 B.R. 372, 378 (N.D. Tex. 2003) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 372, 378 (5th Cir. 1999); internal quotation marks and brackets omitted). In the bankruptcy context, "judicial estoppels must be applied in such a way as to deter dishonest debtors whose failure to fully and

honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors." *Reed*, 650 F.3d at 574.

Judicial estoppel applies when "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id*. The United States Court of Appeals for the Fifth Circuit has held that "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

## A. Gardner's current legal position is plainly inconsistent with her prior legal position.

"It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (quoting *In re Coastal Plains*, 179 F.3d at 207-08; emphasis in original). And the "obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one." *Jethroe*, 412 F.3d at 600.

"By omitting a claim or potential claim from the applicable bankruptcy schedule(s), a debtor represents to the bankruptcy court that the claim does not exist." *Davis v. Wells Fargo Bank,* No. 3:19-cv-2444-M-BN, 2020 WL 2529382 at *4

(N.D. Tex. Apr. 23, 2020), *rep. & rec. adopted* 2020 WL 2527217 (N.D. Tex. May 18, 2020). "Accordingly, if a litigant fails to disclose a pending or potential claim during a bankruptcy proceeding and later attempts to pursue that claim in a court of law, then element one of the test for judicial estoppel is met." *Johnson v. Deutsche Bank Nat. Trust Co.*, No. 3:12-cv-3542-L, 2013 WL 3810715, at *8 (N.D. Tex. July 23, 2013).

Here, Gardner's statements in her asset schedules, which required disclosure of "contingent and unliquidated claims of every nature," represented to the Bankruptcy Court that she had no pending or unliquidated claims. *See* Dkt. No. 20-16 at 10, 49, 100. And so Gardner's pursuit of her claims against Defendants in this Court is plainly inconsistent with her position before the Bankruptcy Court that she had no pending or unliquidated claims.

## B. The Bankruptcy Court has accepted Gardner's prior legal position.

"Courts have consistently held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan." *Abreu v. Zale Corp.*, No. 3:12-cv-2620-D, 2013 WL 1949845, at *3 (N.D. Tex. May 13, 2013) (citing *Jethroe*, 412 F.3d at 600).

The Bankruptcy Court confirmed Gardner's bankruptcy plan in her first bankruptcy. *See* Dkt. No. 20-26 at 93. That bankruptcy case was dismissed on June 11, 2018. *See id.* Because the "obligation to disclose pending and unliquidated claims

in bankruptcy proceedings is an ongoing one," *Jethroe*, 412 F.3d at 600, Gardner had an obligation to disclose her claims through the dismissal of the bankruptcy case.

And so the Bankruptcy Court relied on Gardner's asset schedules through the dismissal of her first bankruptcy case, and Gardner's position in her asset schedules that she had no pending or unliquidated claims through June 11, 2018 has been accepted by the Bankruptcy Court.

**C. Gardner's non-disclosure was not inadvertent.**

"In considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for concealment." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *In re Coastal Plains*, 179 F.3d at 210).

"A plaintiff has knowledge of a claim whenever she knows the facts that give rise to the claim." *Abreu*, 2013 WL 1949845, at *3 (citing *Jethroe*, 412 F.3d at 601.) "[I]f the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains*, 179 F.3d at 208 (citation omitted).

"[T]he motivation element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court." *Love*, 677 F.3d at 622. More specifically, debtors will be found to have the requisite "motivation to conceal where

they stood to reap a windfall had they been able to recover on the undisclosed claim." *Id.* "Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *In re Superior Crewboats*, 374 F.3d at 336 (citation omitted).

Here, any causes of action arising from facts that Gardner knew at the time of her first bankruptcy case's dismissal are known causes of action. And Gardner had motive to conceal such undisclosed claims: she stood to reap a windfall from those undisclosed claims had she been able to recover on them without the Bankruptcy Court knowing.

And so Gardner is barred from pursuing any claims arising from facts that Gardner knew on or before June 11, 2018.

### D. Defendants have not shown that Elam is in privity with the Bankruptcy Court's acceptance of Gardner's legal position.

Those in privity with a prior judgment are barred by the doctrine of judicial estoppel in a subsequent action. *See Feurbacher v. Wells Fargo Bank*, No. 4:15-cv-59, 2016 WL 3669744, at n.2 (N.D. Tex. July 11, 2016).

Defendants have not shown that there is no genuine dispute as to whether Elam is in privity with the Bankruptcy Court's acceptance of Gardner's legal position.

Elam was not a debtor on any of the bankruptcy cases. And, on this record, drawing all reasonable inferences in the light most favorable to Elam (as the nonmoving party) and resolving all disputed factual controversies in his favor,

Defendants have not established that Elam is also an owner of the Property and therefore in privity with the Bankruptcy Court's findings with respect to the Property, *see Davis*, 2020 WL 2529382 at *4, because the deed to the Property is not included in the summary judgment evidence.

Defendants therefore have not shown that there is no genuine factual dispute as to whether Elam is barred from bringing any claims under judicial estoppel.

## IV.    Defendants are entitled to summary judgment on the breach of contract claim.

The Court should grant Defendants' motion for summary judgment as to the breach of contract claim.

Plaintiffs argue that Defendants breached the Deed of Trust by sending defective notices of default and intent to accelerate. *See* Dkt. No. 26 at 3. Defendants argue that the notices of default and intent to accelerate were not defective and that Plaintiffs cannot make a claim for breach of contract because they are in default. *See* Dkt. No. 13 at 19-20. The undersigned agrees with Defendants' first point but disagrees with Defendants' second point.

Under Texas law, to succeed on a breach of contract claim, the plaintiff must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

The Fifth Circuit has articulated an exception to the general proposition that a party's prior breach of a contract will excuse the other party's performance in the context of a debt secured by a deed of trust covering real property. *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244-45 (5th Cir. 2018). This is based on the distinction between independent and dependent promises in Texas contract law. For mutually dependent promises, the breach of one promise will excuse the performance of the other, but, for reciprocal but independent promises, the breach of one promise does not necessarily excuse the performance of the other. *See Barraza v. Bank of Am., N.A.*, No. EP-12-CV-35-KC, 2012 WL 12886438, at *9 (W.D. Tex. Aug. 13, 2012).

The intent of the parties determines whether promises are dependent or independent. *See id.* at *10. Courts will look to the language of the contract to determine this intent. *See id.* Courts will find that a promise is dependent if it "goes to the entire consideration of a contract" and "is conditional upon the prior performance by the other party." *Id.* (quoting *46933, Inc. v. Z & B Enters., Inc.*, 899 S.W.2d 800, 807-08 (Tex. App. – 1995, writ denied)). Courts will find that a promise is independent if it "goes only to part of the consideration on both sides and a breach may be compensated for in damages." *Id.* (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)).

The court in *Barraza* explained that the plaintiffs' promise to make mortgage payments was independent of the defendants' promise to perform their post-default

obligations under the deed of trust before executing a foreclosure sale. *See id.* The court in *Williams* further reasoned that the requirement in a deed of trust of post-default obligations such as a notice of intent to foreclose only has meaning if it can be enforced in the event of default. *See Williams*, 884 F.3d at 245. Reading the post-default obligations as being dependent on the plaintiff's never entering default in the first place renders those obligations meaningless. *See id.* Such a reading would be inconsistent with the principle that Texas courts must "attempt to give effect to all contract provisions so that none will be rendered meaningless." *Id.* (quoting *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).

Failing to fulfil post-default obligations before attempting to foreclose therefore can be the basis for a breach of contract action and is not necessarily barred by default.

But the summary judgment evidence does not show that Defendants failed to fulfil their post-default obligations. The Deed of Trust requires that the lender give notice to the borrower prior to acceleration and following the borrower's default of "the action required to cure the default." Dkt. No. 20-2 at 15. In both notices of default and intent to accelerate, sent on July 18, 2018 and April 27, 2020, the notice provided that

> [t]he action necessary to cure the default is payment of all past due sums owed under the Note, which includes all past due payments, late charges, and other fees collectible under the Note and Security Instrument, and any subsequent payment, late charges, and additional

fees which become due during this cure period must be included…. You may write to us at the provided address or call us at (713) 462-2565 to obtain the amount necessary to bring your loan current.

Dkt. No. 20-6 at 1, 3.

This notice complies with the requirements of the Deed of Trust. The Deed of Trust does not, as Plaintiffs claim, require that the notice itself specify the amount necessary to cure the default. Dkt. No. 20-2 at 15.

And so Plaintiffs have not shown a genuine issue of material fact as to whether Defendants breached the Deed of Trust.

## V.  Defendants are entitled to summary judgment on the fraud claim.

The Court should grant Defendants' motion for summary judgment as to the fraud claim.

To state a claim for fraud under Texas law, "a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud …, a party must state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "To plead fraud adequately, the plaintiff must 'specify

-22-

the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (cleaned up).

The Fifth Circuit has further explained that, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" and that "[t]he plaintiffs must set forth *specific facts* supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (cleaned up; emphasis in original).

> Plaintiffs assert that
>
> Defendant SLS specifically told Plaintiff that she did not qualify for any assistance because of the amount in arrears and instead proceeded to accelerate Plaintiff's loan and post her homestead property for foreclosure sale but failed to ever provide any details of those amounts it claimed due, and refused to accept Plaintiff's tender of payments, even though it accepted several partial payments in her bankruptcy cases…. [E]ach of the acts, conduct and/or omissions of Defendant SLS and/or Deutsche Bank as described herein that constitute common law fraud were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff.

Dkt. No. 1-1 at 17-18.

Beyond the bare assertion that Defendants acted intentionally, knowingly, or with malice, Plaintiffs provide no information about Defendants' fraudulent intent. Plaintiffs further fail to supply any evidence to create a genuine dispute as to whether SLS's statement that Plaintiffs did not qualify for assistance was a misrepresentation. Finally, summary judgment evidence shows that Defendants did provide Plaintiffs with the amount due in the form of mortgage statements and payoff statements. *See* Dkt. No. 20-13, 20-14, and 20-15.

Plaintiffs have not shown a genuine issue of material fact as to whether Defendants committed common law fraud.

## VI.    Defendants are entitled to summary judgment on the Real Estate Settlement Procedures Act and Regulation X claim.

The Court should grant Defendants' motion for summary judgment as to the Real Estate Settlement Procedures Act ("RESPA") and Regulation X claim.

Regulation X restricts a mortgage servicer's ability to engage in dual tracking, or simultaneously evaluating a borrower's application for loss mitigation options and moving forward with foreclosure. *See* 12 C.F.R. § 1024.41. Federal courts have recognized "a federal cause of action against a servicer for dual tracking" under Regulation X. *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 Fed. Appx. 314, 318 n.4 (5th Cir. 2015).

Section 1024.41 provides that

> if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale … a servicer shall … [e]valuate the borrower for all loss mitigation options available to the borrower; and … [p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program … if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal.

12 C.F.R. 1024.41(c).

"A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. 1024.41(i).

Plaintiffs argue that they were not notified of their right to appeal the denial of their loss mitigation applications and that they were not provided with adequate reasons for the denial of their loss mitigation applications.

First, Gardner is barred from bringing this claim. The claim is based on correspondence Plaintiffs received from SLS between December 17, 2015 and July 26, 2016. *See* Dkt. No. 26 at 8-9. The facts giving rise to this claim were known to Gardner before the dismissal of her first bankruptcy case on June 11, 2018. And so judicial estoppel bars her from bringing this claim.

Elam is not barred from bringing this claim. But this claim still cannot survive summary judgment.

The summary judgment evidence shows that SLS responded to Plaintiffs' first complete loss mitigation application on May 6, 2016. *See* Dkt. No. 20-10 at 76-90. That letter included detailed reasoning for the denial of each loss mitigation option. *See id.* The letter also included a section titled "Second Independent Review of Modification Denial," which included a date by which Elam needed to make an appeal. *Id.* at 80.

The summary judgment evidence shows that SLS complied with the requirements of Section 1024.41. The May 6, 2016 letter informed Elam of his right to appeal the denial of his loss mitigation application. It also gave detailed reasoning for the denial of each loss mitigation option, which is not required under Section 1024.41.

And so Elam has not shown a genuine issue of material fact as to whether Defendants violated RESPA and Regulation X.

## VII. Defendants are entitled to summary judgment on the Texas Debt Collection Act claim

The Court should grant Defendants' motion for summary judgment on the Texas Debt Collection Act ("TDCA") claim.

"In order to state a claim under the TDCA, Plaintiff must show: (1) the debt at issue is a consumer debt; (2) Defendants are debt collectors within the meaning of the

TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against Plaintiff; and (5) Plaintiff was injured as result of Defendants' wrongful act." *Sgroe v. Wells Fargo Bank*, *N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013).

A consumer debt is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001(2). A loan for a personal home fits this definition.

A debt collector is "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." TEX. FIN. CODE § 392.001(6). Mortgage servicers are debt collectors in the meaning of the TDCA. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013).

Plaintiffs argue that Defendants committed a wrongful act under Section 392.304(a)(8) of the TDCA, which prohibits "misrepresenting the character, extent, or amount of a consumer debt." TEX. FIN. CODE § 392.304(a)(8). Specifically, Plaintiffs allege that (1) SLS sent "vague, incomplete" notices of default and intent to accelerate that "did not specify with particularity the exact amount required to be paid to cure the default," Dkt. No. 26 at 10, (2) SLS sent notices of default and intent to accelerate

that did not include a credit to Plaintiffs' account for payments made under Gardner's bankruptcy plan, and (3) SLS at some point added $90,000 to Plaintiffs' balance owed.

To show a violation of Section 392.304(a)(8), a plaintiff must show that the defendant "made a misrepresentation that led her to be unaware (1) that she had a mortgage debt, (2) of the specific amount she owed, or (3) that she had defaulted." *Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 832 (5th Cir. 2015). "[M]isrepresenting the amount of debt is not enough for a section 392.304(a)(8) claim; the misrepresentation must cause borrowers to '*think differently* with respect to the character, extent, amount, or status of their debt.'" *Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 374 (5th Cir. 2021) (quoting *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)) (emphasis in original). "To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading." *Verdin v. Fed. Nat. Mortg. Ass'n*, 540 Fed. Appx. 253 (5th Cir. 2013) (quotation marks omitted; emphasis in original).

Plaintiffs' allegation that SLS's Notices of Default and Intent to Accelerate were vague and incomplete is not enough to survive summary judgment. The claimed vagueness and incompleteness are not affirmative statements by SLS. And so this allegation is not enough to survive summary judgment.

Plaintiffs' allegation that SLS sent notices of default and intent to accelerate that did not reflect a credit to Plaintiffs' account for payments made under Gardner's

-28-

bankruptcy plan is not enough to survive summary judgment. Plaintiffs do not claim that these notices of default and intent to accelerate caused them to think differently with respect to the character, extent, amount, or status of their debt. *See Douglas*, 992 F.3d at 375 ("the Douglases do not allege that they ever believed these letters to be an accurate representation of their debt; they merely claim that the letters overstated the amount past due. The letters did not change the Douglases' thinking in any way with respect to their debt; therefore, they cannot serve as the basis for their section 392.304(a)(8) claim."); *Miller*, 726 F.3d at 723 ("Nothing in the Millers' allegations suggests the BAC led them to think differently with respect to the character, extent, amount, or status of their debt…. Accordingly, the Millers have not stated a claim upon which relief may be granted under § 392.304(a)(8).")

Plaintiffs still knew that they had a mortgage debt and that they had defaulted on that debt.  Further, Plaintiffs do not claim that these Notices of Default and Intent to Accelerate changed their understanding of how much they owed. Rather Plaintiffs claim that the notices of default and intent to accelerate did not inform them of how much they owed. The Notices of Default and Intent to Accelerate did not cause Plaintiffs to think differently with respect to their debt. And so this allegation is not enough to survive summary judgment.

Finally, Plaintiffs' allegation that SLS at some point added $90,000 to Plaintiffs' balance owed is not enough to survive summary judgment. Plaintiffs again

do not claim that this alleged addition caused them to think differently about the amount that they owed. And so this allegation is not enough to survive summary judgment.

## Recommendation

The Court should grant Defendants' motion for summary judgment on Plaintiffs' claims; should order that Defendants' counterclaim and request for attorneys' fees and costs against Plaintiff Gardner are stayed; and should grant a discretionary stay as to Defendants' counterclaim and request for attorneys' fees and costs against Plaintiff Elam.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: March 8, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE